2022 IL App (2d) 220160-U
No. 2-22-0160
Order filed June 13, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | |
|---|---|
| WILLIAM BROGAN and JOEL BRUMLICK, ) <br> Objectors, ) <br> ) <br>     Petitioners-Appellants, ) <br> ) <br> v. ) <br> ) <br> ANTONIO "TONY" COLATORTI, ) <br> Candidate, SAMUEL J.H. WEYERS, ) <br> STEVEN J. CUDA and LISLE STALTER, ) <br> In their capacity as members of the McHenry ) <br> County Officers Electoral Board, the ) <br> McHENRY COUNTY OFFICERS ) <br> ELECTORAL BOARD, and JOE TIRIO, as ) <br> McHenry County Clerk, ) <br> ) <br>     Respondents ) <br> ) <br> (Antonio "Tony" Colatorti, Respondent- ) <br> Appellee). ) | Appeal from the Circuit Court <br> of McHenry County. <br><br><br><br><br> No. 22-MR-73 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Honorable <br> Kevin G. Costello, <br> Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The objection to the candidate's qualifications for the office of Sheriff based on the candidate's certification for completing a Minimum Standards Basic Law Enforcement Officers Training Course was properly denied.

¶ 2     Petitioners, William Brogan and Joel Brumlick (objectors), appeal the order of the circuit court of McHenry County affirming the decision of respondent, the McHenry County Officers Electoral Board (Electoral Board), denying the objectors' objection to the candidacy in the June 28, 2022, Republican primary election for the office of Sheriff of McHenry County of respondent, Antonio "Tony" Colatorti (candidate).  On appeal, objectors argue that the candidate does not possess the necessary qualifications for the office of sheriff so his name should not appear on the primary ballot.  We affirm the circuit court's judgment and the Electoral Board's decision.

¶ 3                             I. BACKGROUND

¶ 4     We summarize the relevant facts appearing in the record on appeal.  On May 20, 1999, the candidate was issued a certificate from the Illinois Law Enforcement Training and Standards Board (Training Board), which provided, relevantly, that he had fulfilled "all requirements as prescribed by Chapter 50 Paragraph 705/8.2 of the Illinois Complied Statutes [(50 ILCS 705/8.2 (West 1998)] and is qualified as a Law Enforcement Officer Part-Time."  The candidate has been employed as a law enforcement officer but is currently designated as "inactive" by the Training Board.

¶ 5     On March 7, 2022, the candidate filed his nomination papers to run for the office of Sheriff of McHenry County.  In his statement of candidacy, the candidate represented that he was legally qualified to hold the office of Sheriff.  The candidate did not include a certificate relating to his basic training in his nomination papers.[1]

---

[1]We note that objectors specifically assert as a matter of fact, that it is "undisputed" that the candidate's nomination papers "did not include a certificate demonstrating that he completed the Minimum Standards Basic Law Enforcement Officers Training Course from the [Training

¶ 6     On March 21, 2022, the objectors filed a petition challenging the candidate's qualifications for the office of Sheriff, and specifically, whether he possessed a certificate demonstrating that he successfully completed the proper basic training as prescribed by the Training Board. Objectors argued that the part-time course that he had completed was not the "Minimum Standards Basic Law Enforcement Officers Training Course" (Basic Training Course) specified in section 3-6001.5 of the Counties Code (55 ILCS 5/3-6001.5 (West 2020) (eff. Jan. 1, 2022)), so the candidate did not possess the qualifications to hold the office of Sheriff.

¶ 7     In prosecuting their objection, the objectors also challenged the composition of the Electoral Board. While they maintained this issue on judicial review before the circuit court, objectors have expressly abandoned it on appeal. The Electoral Board was eventually constituted and respondents, Samuel J.H. Weyers, Steven J. Cuda, and Lisle Stalter, were appointed as members of the Electoral Board for purposes of considering the objectors' petition.

¶ 8     On March 28, 2022, the candidate filed a motion to strike and dismiss the objectors' petition. On April 14, 2022, the Electoral Board denied the motion to strike and dismiss, deeming it to be "essentially a factual denial" and answer to the objectors' petition. The Electoral Board then proceeded to an evidentiary hearing on the objectors' petition.

---

Board] or from any substantially similar training program of another state or of the federal government," even though whether the candidate has completed a satisfactory basic training course is the central dispute in this matter. Aside from being the central issue in dispute in this matter, it is also a legal conclusion, and it should not have been represented as an undisputed fact. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 9    The candidate testified that he was a certified law enforcement officer. He received his training at the North East Multi-Regional Training facility (NEMRT). He had served as police chief in Holiday Hills and Prairie Grove. According to the candidate, the only difference between full-time or part-time law enforcement officers was the hours each was permitted to work; both full- and part-time officers received the same training.

¶ 10    The candidate was questioned regarding a waiver request to be qualified as a full-time officer. The waiver was provisionally granted, but the candidate was required to successfully complete the Training Board's 80-hour transition course before he would be considered a full-time law enforcement officer. The candidate separated from the department before he completed the transition course and thus the waiver request was denied.

¶ 11    Objectors asked whether the Training Board had given the candidate a certificate showing that he had completed the Basic Training Course. The candidate explained that, based on the way the question was phrased, no such Basic Training Course certificate existed. Instead, the candidate possessed a certificate from the Training Board authorizing him to be a part-time law enforcement officer. In his opinion, the part-time law enforcement officer basic training certificate demonstrated his successful completion of the statutorily required Basic Training Course. The candidate also noted that his coursework comprised the same number of hours as that for a full-time officer. The candidate testified that he completed his training and passed the certification test, thereby earning his basic training certificate from the Training Board. The candidate stated that the full-time and part-time tests are the same.

¶ 12    The candidate also testified that his basic training course consisted of class work three days per week for a total of 16 hours a week. The candidate testified that the components of his course

work followed consecutively, except for time off during a holiday break. The candidate acknowledged that the full-time course consisted of instruction five days a week for 10 weeks.

¶ 13    John Keigher, chief legal counsel for the Training Board, was qualified without objection as an expert witness on law enforcement training certification. Keigher testified that his duties include ensuring compliance with statutory requirements and interpreting statutes concerning law enforcement training requirements.

¶ 14    Keigher testified that, when the candidate was certified in 1999, both full-and part-time officers were required to take 400 hours of courses (currently, law officer trainees, either full- or part-time, must take 560 hours of courses). Once the officer had completed training, he or she would take the certification examination. According to Keigher, there was no relevant difference between the examinations for full- and part-time officers, either in 1999 or at present. Keigher testified that there are seven approved academies that provide basic training to full-time law enforcement officers and four or five approved mobile training units that provide basic training to part-time officers. NEMRT, or Mobile Team 3 (the Training Board's designation), is one such entity approved to provide basic training for part-time officers. Both the full-time academies and the part-time mobile training units provide the same curriculum as specified in section 7 of the Illinois Police Training Act (Police Training Act) (50 ILCS 705/7 (West 2020) (eff. Jan. 1, 2022)).

¶ 15    Keigher testified that the term, "Minimum Standards Basic Law Enforcement Officers Training Course," was nowhere defined in the administrative rules or the statutes. Keigher testified that, to complete a Basic Training Course (as that term is used in the Counties Code and Police Training Act), an officer must engage in a Basic Law Enforcement Course that is offered through either a full-time academy or a part-time mobile training unit. The certificate that is issued

to the successful student does not expressly state that the officer completed the Basic Training Course even though, by completing the full- or part-time training, the officer in fact did complete the Basic Training Course.

¶ 16     Keigher testified that, once an officer completes the Basic Training Course and passes the certification examination, he or she becomes a certified law enforcement officer.  Keigher was shown the certificate of the candidate and stated that he recognized it as "a certificate from the [Training Board] indicating completion of an academy and passage of the State's Certification Exam."   Keigher further opined that the certificate evidenced the candidate's "successful completion of the [Basic Training Course.]"

¶ 17     On cross-examination by objectors, Keigher testified that the method of delivery of the training differed between full- and part-time courses.  Keigher explained that a full-time course would be "full time continuous" and accomplished within 6 months, and he agreed that the part-time course would be "a little more sporadic and protracted" and accomplished within 18 months. On examination by the Electoral Board, Keigher reiterated that "the training curriculum for a full-time police officer and a part-time police officer [was] basically the same."  Moreover, since 1996, when the training program was created, "the [Training] Board has held the commitment that the curriculum shall remain the same [between the full-time and the part-time courses]."

¶ 18     In the record are the Training Board certificates for the candidate and for the candidate's opponent in the upcoming primary election, Robb A. Tadelman.  The certificate awarded to Tadelman, who trained and qualified as a full-time law enforcement officer, "certifies the fulfillment of all requirements as prescribed by Chapter 50 Paragraph 705 of the Illinois Compiled Statutes and is qualified as a Law Enforcement Officer."  The certificate awarded to the candidate,

who trained and qualified as a part-time law enforcement officer, "certifies the fulfillment of all requirements as prescribed by Chapter 50 Paragraph 705/8.2 of the Illinois Compiled Statutes and is qualified as a Law Enforcement Officer Part-Time."

¶ 19     At the conclusion of the evidentiary hearing, the Electoral Board deliberated.  Board Member Cuda considered the statutory language of sections 8.1 and 8.2 of the Training Act (50 ILCS 715/8.1, 8.2 (West 2020) (eff. Jan. 7, 2022)), observing that, in section 8.2, the "part-time police training course referred to in this section shall be of similar content and the same number of hours as the courses for full-time officers."  Cuda recounted that Keigher "testified that the courses taken by [the candidate] were not just similar but were the same as the courses that were taken by—would be taken by someone who's trying to become a full-time officer under Section 8.1."  Cuda reasoned that the substance of the candidate's training should prevail over the form, explaining, "if they're the same courses, and the purpose of the Act is to make sure that our candidates have some qualifications to serve in the capacity of Sheriff, then I don't think it should really matter what we call those courses."  Cuda continued, observing that the Counties Code "refers to a certification attesting to successful completion of the minimum standard.  Everyone here testified there is no such certificate."  Cuda concluded that, "at the end of the day, [the candidate] does have the certificate.  He did complete.  He completed the same courses that [Tadelman] took."

¶ 20     Board Member Stalter first reasoned that the issue of the candidate's inactive status was not properly before the Electoral Board and should be rejected.  Next, like Cuda, she noted that, while the Counties Code required "a certificate attesting to the completion of the minimum Standards Basic Law Enforcement Training Course ***, there is no such certificate.  Even the

certificate of [Tadelman] doesn't say that he completed the course." Stalter endorsed Cuda's reasoning and reached the conclusion that the candidate possessed the required training.

¶ 21 Board Member Weyers noted that he "found Mr. Keigher's testimony to be compelling." Weyers emphasized that Keigher had testified that the examinations for a full- and part-time officer were substantively identical, that the candidate was a licensed law enforcement officer regardless of his active or inactive status, and that the training between a full- and part-time officer differed only in its method of delivery. Weyers, too, concluded that the candidate possessed the proper qualifications for the office of sheriff.

¶ 22 The Electoral Board then issued its written determination:

"a. Based on the testimony of the Candidate and Mr. Keigher, the Candidate meets the qualifications required to run for Sheriff. The candidate [*sic*] has successfully completed the Minimum Standards Basic Law Officers Training Course as prescribed by the [Training Board], and has obtained the certificate required by [section 3-6001.5(4) of the Counties Code (55 ILCS 5/3-6001.5(4) (West 2020) (eff. Jan. 1, 2022))];

b. The Objectors' argument that the Candidate's 'inactive' status as reflected on the [Training Board's] website was waived because such argument was not included in the Objection to the Nominating Petition; and

c. Any other findings of the Electoral Board are included in the record."

The Electoral Board denied the objectors' petition and determined that the candidate's name shall remain on the ballot for the June 28, 2022, Republican primary election.

¶ 23 On April 19, 2022, objectors filed a timely petition for judicial review. Before the circuit court, objectors again argued that the candidate was not properly qualified for the office of sheriff

because he had not completed the Basic Training Course because the course completed by the candidate was not continuous and full time.[2] Following the parties' briefing of the matter, on May

---

[2]The objectors maintain that they argued before the trial court that another ground to invalidate the candidate's candidacy was because he was on inactive status, and they cite to the entirety of their memorandum in support of their petition for judicial review and the entirety of their reply. There are at least two problems with objectors' methodology here. First, a blanket cite to large swaths of the record is inappropriate. The applicable rule calls for the statement of facts to include "appropriate reference to the pages of the record" to support the factual assertions. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The purpose of this requirement is to allow the reviewing court to assess whether the party's portrayal of the events is fair, accurate, and borne out by the record. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 58. The citation to an entire pleading does not serve the purpose of the rule. More problematic, however, is the fact that in neither the memorandum in support nor the reply filed in the circuit court did objectors argue that the candidate's inactive status should operate as a bar to his candidacy. The blanket citation to the entirety of the pleading only serves to hide the ball in addition to frustrating our ability to assess whether the record bears out the objectors' factual assertions. We recognize that we allowed objectors to submit a memorandum in lieu of a formal brief in this appeal, but this accommodation does not excuse objectors' failure to comply with our supreme court's rules, and it certainly does not permit them to play fast and loose with the record on appeal while purporting to relate the underlying factual events. Counsel is admonished to comply faithfully with the supreme court rules in the future.

11, 2022, the parties argued before the circuit court. On May 13, 2022, the circuit court affirmed the Electoral Board's decision. On the same day, objectors filed their notice of appeal. On May 19, 2022, objectors filed an agreed motion to accelerate this appeal pursuant to Supreme Court Rule 311(b) (eff. Jul. 1, 2018), and, on May 20, 2022, we granted the motion, and we allowed the parties to submit memoranda instead of formal briefs.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, objectors challenge the decision of the Electoral Board denying their petition. Objectors' argument consists of two components: first, objectors contend that the candidate did not complete a proper Basic Training Course, so he does not possess the correct certificate under the Counties Code. Second, objectors argue that the candidate's inactive status also invalidates his candidacy. From these two main arguments, objectors conclude that the candidate submitted a false statement of candidacy which invalidates his nomination papers. We consider the contentions in turn.

¶ 26                              A. Standard of Review

¶ 27    As an initial matter, we consider our standard of review for this appeal. An electoral board considering an objection to a candidate's nomination is deemed an administrative agency, and judicial review of an electoral board's decision proceeds according to the principles of administrative review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209-10 (2008). The particular standard of review depends on the type of question presented by the administrative decision: a question of fact, a question of law, or a mixed question of fact and law. *Id.* at 210. Further, we review the agency's decision, not that of the circuit court. *Id.* at 212.

¶ 28     The administrative agency's findings of fact are deemed *prima facie* true and correct. *Id.* at 210. The reviewing court does not reweigh the evidence or substitute its judgment for the agency's. *Id.* The reviewing court is limited to considering whether the agency's factual determination is against the manifest weight of the evidence, meaning the opposite conclusion is clearly evident. *Id.*

¶ 29     For a question of law, the reviewing court no longer defers to the agency. *Id.* Instead, review of a question of law is *de novo*. *Id.* Additionally, for legal questions, we apply the appropriate principles to the question posed. In this case, we are called upon to interpret several statutes and administrative rules. In such an instance, we ascertain and give effect to the legislative intent, and the best indication of the legislative intent is the language employed in the statute given its plain and ordinary meaning. *Zurek v. Petersen*, 2015 IL App (1st) 150508, ¶ 18. Clear and unambiguous statutory language will be applied as written without resort to other principles of statutory construction. *Id.*

¶ 30     A mixed question of fact and law presents a situation in which the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or, in other words, whether the rule of law as applied to the established facts is or is not violated. *Cinkus*, 228 Ill. 2d at 211. For the mixed question of fact and law, the reviewing court reviews whether the agency's decision is clearly erroneous. *Id.* An agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* With these principles in mind, we turn to the objectors' contentions on appeal.

¶ 31                         B. Basic Training Course and Certificate

¶ 32    Objectors' initial contention is that the candidate did not complete the Basic Training Course and does not possess the correct certificate of law enforcement training to qualify for the office of sheriff.  To understand this contention, we must first delve through the relevant statutory and administrative authority.

¶ 33    As an initial matter, section 3-6001.5 of the Counties Code (55 ILCS 5/3-6001.5 (West 2020) (eff. Jan. 1, 2022)) was amended effective January 1, 2022, to add subsection 4 to the provision, adding a new requirement to the qualifications to be elected or appointed to the office of sheriff.  Section 3-6001.5 currently provides:

> "A person is not eligible to be elected or appointed to the office of sheriff, unless that person meets all of the following requirements:
>
> > (1) Is a United States citizen.
> >
> > (2) Has been a resident of the county for at least one year.
> >
> > (3) Is not a convicted felon.
> >
> > (4) Has a certificate attesting to his or her successful completion of the Minimum Standards Basic Law Enforcement Officers Training Course as prescribed by the Illinois Law Enforcement Training Standards Board or a substantially similar training program of another state or the federal government. This paragraph does not apply to a sheriff currently serving on the effective date of this amendatory Act of the 101st General Assembly." *Id.*

¶ 34    The Counties Code does not define "the Minimum Standards Basic Law Enforcement Officers Training Course."  In fact, the precise term, "Minimum Standards Basic Law Enforcement Officers Training Course" is repeated nowhere else in the Illinois Compiled Statutes.

¶ 35    Objectors' argument is concerned solely with the provision (or not) of the Basic Training Course and its requisites.  It is fair, then, to hold them to their argument, and because their argument is exceedingly semantical, so too must be our analysis.

¶ 36    Objectors argue that the candidate does not possess a certificate pursuant to section 3-6001.5 of the Counties Code.  Instead, the candidate possesses a certificate attesting to the completion of a part-time law enforcement basic training course pursuant to section 8.2 of the Police Training Act (50 ILCS 705/8.2 (West 2020) (eff. Jan. 7, 2022)).  Objectors argue that the part-time basic training course is not the Basic Training Course required under section 3-6001.5(4) of the Counties Code because it was not provided on a continuous and full-time basis, and it is not the same as the full-time basic training course pursuant to section 8.1 of the Police Training Act (50 ILCS 705/8.1 (West 2020 (eff. Jan. 7, 2022)).  We thus turn to the Police Training Act.

¶ 37    The Police Training Act sets forth the requirements for full- and part-time law enforcement officers.  Section 2 provides definitions for use throughout the Police Training Act.  *Id.* § 2.  Notably, section 2 does not define any type of basic training course.  The closest it comes is a definition for a " '[b]asic training school' " which "means any school located within the State of Illinois whether privately or publicly owned which offers a course in basic law enforcement or county corrections training and has been approved by the Board."  *Id.*

¶ 38    Section 7 of the Police Training Act sets forth the curricular standards and other requirements of the basic training schools.  *Id.* § 7.  Once again, it does not define either a Basic Training Course or a part-time basic training course; instead, it provides for the curriculum (*id.* § 7(a)), the minimum courses of study (*id.* § 7(b)), the instructor standards (*id.* § 7(c)), and the minimum basic training requirements for law enforcement officers, county corrections officers,

and court security officers (*id.* § 7(d)-(f)). The balance of section 7 deals with in-service training requirements once an officer enters employment. *Id.* § 7(g)-(i). The requisites of any of the basic training courses are not discussed; rather the Training Board is empowered to create and oversee the necessary basic training courses.

¶ 39    Section 8.1 of the Police Training Act expressly covers full-time law enforcement and county corrections officers. To be serve as a full-time law enforcement officer, a person must be:

"awarded *** a certificate attesting to the officer's successful completion of the Minimum Standards Basic Law Enforcement or County Correctional Training Course as prescribed by the [Training Board]; or has been awarded a certificate attesting to the officer's satisfactory completion of a training program of similar content and number of hours and which course has been found acceptable by the [Training Board] under the provisions of this Act; or a training waiver by reason of extensive prior law enforcement or county corrections experience [where] the basic training requirement is determined by the [Training Board] to be illogical and unreasonable." *Id.* § 8.1(a).

We carefully highlight that the certificate does not attest to the officer's successful completion of the Basic Training Course specified in section 3-6001.5(4) of the Counties Code; instead, a section 8.1 certificate attests to the successful completion of a "Minimum Standards Basic Law Enforcement or County Correctional Training Course." Objectors' argument requires the "magic words" of the Basic Training Course specified in section 3-6001.5(4) of the Counties Code and does not refer to the actual words employed in section 8.1 of the Police Training Act.

¶ 40    Section 8.2 of the Police Training Act expressly covers part-time law enforcement officers. To serve as a part-time law enforcement officer, one:

"must obtain from the [Training Board] a certificate (i) attesting to the officer's successful completion of the part-time police training course; (ii) attesting to the officer's satisfactory completion of a training program of similar content and number of hours that has been found acceptable by the [Training Board] under the provisions of this Act; or (iii) a training waiver attesting to the [Training Board's] determination that the part-time police training course is unnecessary because of the person's extensive prior law enforcement experience." *Id.* § 8.2(a).

Section 8.2 does not refer to any "Minimum Standards" basic training course, only to "the part-time police training course." Additionally, section 8.2(c) provides that: "the part-time police training course referred to in this Section shall be of similar content and the same number of hours as the courses for full-time officers." *Id.* § 8.2(c). The difference in the words used in section 8.2 from those in section 8.1 highlights the fact that full-time law enforcement officers are treated and employed differently than part-time law enforcement officers. Both, however, receive the same law enforcement training and exercise the same duties as law enforcement officers, as limited by their full- or part-time status.

¶ 41 We also note that sections 8.1 and 8.2 of the Police Training Act are structurally equivalent. To receive a certificate, the full- or part-time officer must do one of three things: pass the relevant basic training course, complete an acceptable similar basic training course, or receive from the Training Board an experience-based waiver of the basic training requirement. *Id.* §§ 8.1(a), 8.2(a). We further note that sections 8.1 and 8.2 concern, in relevant part, becoming a certificated law enforcement officer; they do not concern the qualifications for the office of sheriff.

¶ 42    Turning to the terms of objectors' argument, we note that the basic training requirement in section 8.2(a) is obviously far afield from the "magic words" of the Basic Training Course under section 3-6001.5(4) of the Counties Code, and this difference in the terms employed apparently provided the impetus for objectors' semantical argument.  However, under the terms of the objectors' semantical argument, a certificate under either section 8.1 or section 8.2 of the Police Training Act will not satisfy the certification requirement of section 3-6001.5(4) of the Counties Code.  Thus, under objectors' argument, a basic training certificate pursuant to either section 8.1 or 8.2 of the Police Training Act does not satisfy the terms of the requirement under section 3-6001.5(4) of the Counties Code.

¶ 43    Nevertheless, objectors scoff that the section 3-6001.5(4) Basic Training Course applies only to full-time officers "because the phrase 'Minimum Standards Basic Law Enforcement Officers Training Course' appears nowhere else in the Illinois Police Training Act," and section 8.1 of the Police Training Act "specifies that it does not apply to part-time officers [(*id.* § 8.1(f))]."  Objectors overlook the important fact that section 8.1 does not contain the phrase, "Minimum Standards Basic Law Enforcement Officers Training Course."

¶ 44    It is certainly not unreasonable to inquire whether the "Minimum Standards Basic Law Enforcement Officers Training Course" language in section 3-6001.5(4) of the Counties Code is essentially the same as the "Minimum Standards Basic Law Enforcement or County Correctional Training Course" language of section 8.1 of the Police Training Act.  We note, however, that there is no definition provided for any basic training course in either the Counties Code or the Police Training Act.  Further, objectors rely on the specific words employed in section 8.1 as distinct from section 8.2 of the Police Training Act to make their argument.  We are thus constrained, both

by the principles of statutory construction and the terms of objectors' argument itself, to consider the actual language employed in the various provisions to ascertain the legislative intent and the resolution of objectors' contentions. Thus, section 3-6001.5(4) employs a specific term in promulgating the requirements for the office of sheriff, and sections 8.1 and 8.2 of the Police Training Act employ similar, but not identical, terms in promulgating the certification requirements for full- and part-time law enforcement officers. Because the terms are not the same, we cannot blithely assume that the differing undefined terms refer to the same thing.

¶ 45    Thus, we emphasize that the legislative intent is gleaned through the actual words employed. Given the disparity in the actual words employed despite, as we explain below, the legislature's opportunity to employ exactly the same terms across the various provisions, we must assume the choice of different words was deliberate to signify some difference. See *People v. Bradley M.*, 352 Ill. App. 3d 291, 296 (2004) (a change to the statutory language by an amendment is presumed to change the law; the words used in the amendment must be given effect). Thus "Minimum Standards Basic Law Enforcement *** Training Course" in the Police Training Act signifies something different than "Minimum Standards Basic Law Enforcement Officers Training Course" in the Counties Code. The term appearing in section 8.1 of the Police Training Act, by its structure and terms, applies to full-time officer training. The term appearing in the Counties Code, by its difference, would seem to appear to all "Law Enforcement Officers Basic Training" encompassing, perforce, full- and part-time law enforcement officers basic training.

¶ 46    This does not end the interpretive quagmire. The Training Board, empowered to make administrative rules to implement the requirements of the Police Training Act, promulgated the following "Course Requirements:"

"(a) Minimum Hours

(1) The Board, from time to time, shall set the minimum number of hours in prescribed subjects of the Minimum Standards Basic Law Enforcement Officers Training Course. An hour of instruction is defined as being 50 minutes of actual instruction plus a 10 minute recess period.

(2) The Board strongly recommends that the minimum number of hours set by the Board be exceeded whenever possible.

(b) The Minimum Standards Basic Law Enforcement Officers Training Course shall consist of concentrated study which is continuous and full time.

(c) The Basic Course shall cover the prescribed subjects with the instructional time as specified in the approved curriculum and instructor's guides.

(d) Training in advanced and specialized areas of police work must follow curricula approved by the Board to be reimbursable.

(e) In-service refresher type training on a departmental or regional level should be designed to meet particular problems of that locale. Therefore, each proposed course of this type shall be considered for reimbursement on an individual basis by the Board.

(f) As a general rule, the Board will not certify any course of training that is not at least 30 hours in length, with training to cover no less than 6 hours each day on consecutive days." 20 Ill. Admin. Code. 1720.10 (eff. Sept. 23, 2004).

¶ 47    Section 1720.10, confusingly, refers to the basic training course as "the Minimum Standards Basic Law Enforcement Officers Training Course." Confusingly, because the statute empowering the Training Board to make the necessary administrative rules does not itself employ

that language. Nevertheless, administrative rules are interpreted according to the principles of statutory interpretation, ascertaining and giving effect to the intent of the drafters. *Apostolov v. Johnson*, 2018 IL App (1st) 173084, ¶ 24. When a court interprets administrative rules in conjunction with a statute, they should construe the rules and the statute together to make an effective piece of legislation in harmony with common sense and sound reason, if possible. *Kankakeeland Community Action Program, Inc. v. Illinois Department of Commerce and Community Affairs*, 197 Ill. App. 3d 1067, 1074 (1990). However, while administrative rules may guide a court's interpretation of a statute, they are binding on the court only to the extent they follow the statute. *In re Marriage of Wehr*, 2021 IL App (2d) 200726, ¶ 30.

¶ 48 Can we say that a rule that does not employ the specific wording and terms of the statute that empowers the administrative agency to promulgate that rule is following the statute? On the other hand, the rule follows the language of a completely separate statutory provision, section 3-6001.5 of the Counties Code, which, while dovetailing, perhaps, with sections 8.1 and 8.2 of the Police Training Act, is not the statute with which the rule must be harmoniously interpreted. However, we note that section 8.2(c) provides a way to harmonize the disparate provisions. Section 8.2(c) expressly provides that the "part-time police training course" "shall be of similar content and the same number of hours as the courses for full-time officers." 50 ILCS 705/8.2(c) (West 2020) (eff. Jan. 7, 2022). Moreover, section 7 of the Police Training Act does not distinguish between full- and part-time training. Rather, it sets forth the curricular and basic training requisites for law enforcement officers with no distinction between full-time and part-time employment status. The provisions of the Police Training Act therefore require that the basic training courses for full-time police and part-time police be substantially similar, down to the number of hours of

training. The difference between a full-time and a part-time law enforcement officer position is not in the training or the tasks that can be performed—it is in the number of hours each may work (and any nonsalary benefits associated with each type of employment).

¶ 49    The remaining piece of our interpretive puzzle is Keigher's testimony at the evidentiary hearing before the Electoral Board. Keigher testified that the coursework and other aspects of basic training were identical between full-time and the part-time basic training courses. The difference lay in the "method of delivery." The full-time trainee attended a full-time course of instruction at an academy, while the part-time trainee attended a part-time course of instruction at a Mobile Training Unit. The candidate testified that his course of instruction consisted of training three days per week, and so it was not accomplished in the same amount of time as a full-time trainee's course of instruction. Based on all of the foregoing, we conclude that the candidate's part-time basic training course is functionally equivalent to a full-time trainee's basic training course, and it fulfils the certification requirement of section 3-6001.5(4) of the Counties Code. Accordingly, the Electoral Board properly denied objector's petition on the certification ground.

¶ 50    Objectors' basic argument also defies logic. Objectors acknowledge that graduates from neither full-time nor part-time basic training courses possess the "correct" certificate with the language that the certificate-holder has made a "successful completion of the Minimum Standards Basic Law Enforcement Officers Training Course." Indeed, the full-time and part-time basic training course certificates in the record demonstrate that neither complies with the precise language of the Counties Code. Tadelman's full-time certificate "certifies the fulfillment of all requirements as prescribed by Chapter 50 Paragraph 705 of the Illinois Compiled Statutes," which is a far cry from "successful completion of the Minimum Standards Basic Law Enforcement

Officers Training Course" as specified in section 3-6001.5(4) of the Counties Code. The candidate's part-time certificate "certifies the fulfillment of all requirements as prescribed by Chapter 50 Paragraph 705/8.2 of the Illinois Compiled Statutes," which is even further afield from section 3-6001.5(4). We note that section 8.2(c) expressly requires that the basic training for a part-time officer be substantively equivalent to the basic training for a full-time officer. Thus, by their terms, both certificates are substantially equivalent, attesting to the specified basic training in the Police Training Act, and both certificates do not fulfill the specific linguistic requirements of section 3-6001.5(4) of the Counties Code. If we accept objectors' basic argument, then no one—not a full-time graduate or a part-time graduate—would be qualified to be elected or appointed to the office of sheriff. Accepting objectors' basic argument would mean that the General Assembly had, *sub silentio*, abolished the office of sheriff, but not the sheriff's police department, a plainly absurd result prohibited by the most fundamental principles of statutory interpretation. *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27 (statutes are construed to avoid absurd results).

¶ 51   Objectors also argue, flatly, that part-time law enforcement officers are not qualified for the office of sheriff. This is manifestly incorrect. Section 8.2(a) of the Police Training Act provides, pertinently, that:

> "An individual who is not certified by the [Training Board] or "whose certified status is inactive shall not function as a law enforcement officer, be assigned the duties of a law enforcement officer by an agency, or be authorized to carry firearms under the authority of the employer, except that sheriffs who are elected are exempt from the requirement of certified status." 50 ILCS 705/8.2(a) (West 2020) (eff. Jan. 7, 2022).

A statute is construed to give effect and meaning to every word and phrase. *Palm v. Holocker*, 2018 IL 123152, ¶ 21 (a statute must not be read so as to render any part superfluous or meaningless). To accept objectors' argument would require us to effectively strike the express exemption for a sheriff from section 8.2 of the Police Training Act. This we may not do. *Id.* We further note that the amendment adding the Basic Training Course requirement to the Counties Code occurred before the amendment to the Police Training Act, suggesting that the legislature could have changed the terms in the Police Training Act to conform to those in the Counties Code, but did not. As noted above, this suggests that, by employing different terms, the legislature intended the different terms to have different meanings. Section 8.2 rebuts objectors' argument that part-time law enforcement officers are not qualified to hold the office of sheriff.

¶ 52    Objectors correctly note that section 1720.10 of the Administrative Code specifically mentions, verbatim, the Basic Training Course required in section 3-6001.5(4) of the Counties Code. According to objectors, the only specific requirement in section 1720.10 is that "[the Basic Training Course] shall consist of concentrated study which is continuous and full time." 20 Ill. Admin. Code 1720.10(b) (eff. Sep 23, 2004). As explained above, however, section 8.1 of the Police Training Act does not use the same term for the full-time basic training course. Moreover, the Administrative Code defines an acceptable course as being "at least 30 hours in length, with training to cover no less than 6 hours each day on consecutive days." *Id.* § 1720.10(f). This suggests that an acceptable course of study for the part-time basic training could also satisfy the course requirements for the Basic Training Course discussed in section 1720.10 and still be deemed "continuous and full time." In any event, as explained above, the fact that there is a difference in the terms employed in the Counties Code, the Police Training Act, and the

Administrative Code, coupled with the requirement in section 8.2(c) that part-time training be effectively the same as full-time training, means that the "continuous and full time" requirement does not disturb the functional equivalence between the courses of study described in sections 8.1 and 8.2 of the Police Training Act.

¶ 53    Objectors argue that "there is no requirement for part-time training to be continuous and full time, as is required by Section 8.1 and the Administrative Rules for the [Basic Training Course.]"   Of course, section 8.1 of the Police Training Act does not have any requirement concerning that the full-time training be "continuous and full time" (50 ILCS 705/8.1 (West 2020) (eff. January 7, 2022)), and this significantly undercuts objectors' contention on this point. Despite the "continuous and full time" requirement in the administrative rules, as we have explained, the statutes and rules can be harmoniously interpreted together with no violence to the varying language employed in the provisions.  We therefore reject this contention.

¶ 54    Objectors argue that the administrative rules expressly reject that the part-time basic training is equivalent to the full-time basic training.  See 20 Ill. Admin. Code 1770.206(o) ("Successful completion of the Part-Time Certification Examination will not be deemed equivalent to or sufficient in and of itself to render said part-time police officer eligible to obtain a waiver of full-time law enforcement basic training or a certificate attesting to equivalent training as a full-time law enforcement officer.")   While objectors correctly recite the provision from the administrative rule, they misconceive its purpose.  Section 1770.206(o) maintains the difference between full- and part-time officers.  In other words, possessing a part-time certificate does not, by itself, entitle a graduate to work as a full-time law enforcement officer.  The provision does not, however, speak to whether the certificate demonstrates the completion of the Basic Training

Course under the Counties Code, only to the effect of such a certificate on an officer's eligibility to a particular employment status, part-time or full-time. Thus, section 1770.206(o) does not speak to whether part-time law enforcement training fulfills the qualifications for the office of sheriff, only whether a part-time certificate holder is automatically allowed to receive a full-time employment waiver. Objectors' contention is misplaced.

¶ 55    Continuing in this vein, objectors contend that the certificates are not interchangeable because the candidate required further training to be eligible for employment as a full-time law enforcement officer. This contention begs the question of whether the certificate held by the candidate attests to his successful completion of the Basic Training Course required under section 3-6001.5(4) of the Counties Code. The fact that the full-time and part-time certificates may be equivalent for some purposes but not others does not mean they can never be equivalent for any purposes. Based on our interpretation of the various provisions and rules, the certificates both satisfy the requirements of section 3-6001.5(4) even though holding the part-time certificate does not automatically make an officer eligible for employment as a full-time law enforcement officer. This contention, too, is misplaced.

¶ 56    Objectors next contend that it is uncontroverted that the candidate did not complete a course that was continuous and full time. Again, as we have explained above, it does not change the fact that the candidate's certificate qualifies him for the office of sheriff. Because the candidate's certificate fulfills the requirements of section 3-6001.5(4) by evidencing the completion of the requisite Basic Training Course, we reject objectors' contention.

¶ 57    Objectors argue that the training history of the candidate does not show that he completed a Basic Training Course, unlike the training history of the candidate's opponent, Tadelman, which

does. Neither training report shows that either the candidate or Tadelman completed a Basic Training Course, as that term is used in section 3-6001.5(4). The candidate's report showed that he completed four PEP courses beginning in October 1998 and continuing through May 1999. It also states that the candidate completed "Basic Training – Part Time" from October 1998 through May 1999, which comprises the completion of the individual PEP courses. The candidate completed his training at Mobile Training Unit 3. Similarly, Tadelman's report shows that he completed "Basic Training – L.E. – 400 Hours" from January 2004 through April 2004. Tadelman completed his training at the Illinois State Police Academy. The objectors' argument is specifically rebutted by the evidence in the record: neither training report shows that either officer completed the "Minimum Standards Basic Law Enforcement Officers Training Course," only that they completed some sort of "Basic Training," either expressly designated part-time for the candidate, or designated "L.E." for Tadelman which was not explained during the hearing, but which seems to represent the full-time basic training. Thus, the certificates do not support objectors' argument.

¶ 58    Objectors' argument also overlooks the testimony at the hearing. Keigher testified that the part-time and full-time basic training courses were equivalent—the same substance was taught in each for the same number of training hours. The difference was in the method of delivery. We note, too, that the equivalency is borne out by the Police Training Act. Section 7 does not differentiate the substance of the instruction for law enforcement trainees—both full-and part-time trainees receive instruction on the same topics. 50 ILCS 705/7 (West 2020) (eff. Jan 7, 2022). Section 8.2(c) requires that the content of the part-time basic training course be similar to "the courses for full-time officers" (*id.* § 8.2(c)), and the hearing testimony demonstrated that the

training was effectively identical. Because the curricular requirements in section 7 do not differentiate between full- and part-time basic training instruction, and because the testimony at the hearing demonstrated that the course of instruction was the same for both full- and part-time basic training, we conclude that the basic training for both is the same.[3]

¶ 59    Objectors further assert that the part-time basic training does not consist of a single course unlike full-time basic training. This again misreads the evidence in the record. The candidate's training history shows a singular "Basic Training – Part Time" entry as well as its four component PEP courses. The dates of the four component PEP courses correspond to the dates of the "Basic Training – Part Time" course. We further note that section 8.2(c) recognizes the reality of basic law enforcement training by mandating that the part-time basic training be similar to "the courses for full-time officers" (*id.*), which we have determined to be effectively identical to the full-time training. We conclude by noting that objectors' contention on this point simply ignores the evidence in the record, namely, the "Basic Training – Part Time" entry in the candidate's training history and the testimony at the evidentiary hearing that the instruction for both part- and full-time basic training was the same. Thus, objectors' argument is based on an artfully incomplete presentation of relevant facts adduced in the record, and we reject it.

---

[3]While the training is the same, the eligibility for a position upon completion differs. Full-time training makes one eligible for a full-time position; part-time training makes one eligible for only a part-time position. This difference explains why the candidate was required to undertake additional training when he was trying to transition to a full-time law enforcement offer position.

¶ 60    Objectors next argue that the full-time certificate demonstrates that a trainee has completed the Basic Training Course while a part-time certificate demonstrates only that an officer has completed a part-time basic training course.  As we have discussed above, neither certificate evidences completion of the Basic Training Course.  Rather, the full-time certificate refers to the requirements of the Police Training Act, and the part-time certificate refers to the requirements of section 8.2 of the Police Training Act.  The Basic Training Course is nowhere mentioned on the certificate or, as we have explained above, in the Police Training Act itself.  Objectors' contention is unsupported in the record and in the applicable provisions of the Police Training Act, and we therefore reject it.

¶ 61    Next, objectors review and decry the circuit court's decision.  We need not address any of the points contained in this argument because we are reviewing the Electoral Board's decision, not the circuit court's review of the Electoral Board's decision.  *Cinkus*, 228 Ill. 2d at 212.  Here, the circuit court's decision was well crafted and well-reasoned, and it provided us with a clear understanding of how the circuit court reviewed the Electoral Board proceedings, for which we commend the circuit court.  Nevertheless, its decision is irrelevant to our review of the Electoral Board's decision, just as our decision will be irrelevant to any further judicial review of the Electoral Board's decision.  We therefore will not further consider any of objectors' specific contentions about the trial court's decision.

¶ 62    The objectors next caution us that we "cannot disregard the statute even if it has a harsh result."  We agree with objectors that the primary object of our review here is to understand and ascertain the legislative intent and to give it the proper expression.  Objectors exhort us to "follow the statute" while they themselves ignore the actual words employed.  This is illustrated by noting

that objectors quote the language in section 8.1 of the Police Training Act that mentions the "Minimum Standards Basic Law Enforcement or County Correctional Training Course," and then, in almost the very next sentence, transmute it into the "Minimum Standards Basic Law Enforcement Officers Training Course." While the difference in terminology is slight, the words used by the legislature are important, as the words reveal the intent of the provision. See *Bradley M.*, 352 Ill. App. 3d at 296 (2004) (a change to the statutory language by an amendment is presumed to change the law; the words used in the amendment must be given effect). The fact that the Counties Code refers to a Basic Training Course in a blanket sense, and the Police Training Act fleshes out the basic training requirements of full- and part-time law enforcement officers requires careful and painstaking scrutiny, and objectors' subtle manipulation of the actual words used in the various provisions is more of a barrier to understanding than a revelation. Our review of the provisions at issue has harmonized the different terms used; objectors' argument simply ignores any inconvenient inconsistency when recognizing it might lead to a harsh result contrary to objectors' position.

¶ 63      Objectors contend that both the Electoral Board and the circuit court "did not like" the result of their interpretation of the statute in which only a full-time officer could be qualified for the office of sheriff. In support, they recite that "[l]anguage free from ambiguity and doubt will be given effect even if the consequences are harsh, absurd, or unwise." *Village of Chatham v. County of Sangamon*, 351 Ill. App. 3d 889, 894 (2004). *Village of Chatham*, in turn relied on *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 118 Ill. 2d 546, 556-57 (1999), for the proposition that, where the statute is unambiguous, no matter the court's opinion of its wisdom, it must be given effect as written because any harsh, unjust, absurd, or unwise consequences can be

avoided only through legislative action, not through judicial fiat. We wholly endorse the legal principles noted by objectors, but they do not apply in this case.

¶ 64    The Police Training Act does not define "Minimum Standards Basic Law Enforcement Officers Training Course." In fact, the Police Training Act does not mention "Minimum Standards Basic Law Enforcement Officers Training Course." Section 3-6001.5(4) of the Counties Code requires a sheriff to have passed a "Minimum Standards Basic Law Enforcement Officers Training Course," but does not define it or reference where such a course may be found elsewhere in the statutes. We cannot say that the language in these statutes is "free from ambiguity and doubt" so that we must give it effect as written even though we may not "like" the consequences. Rather, we have harmonized the disparate provisions to give effect to the manifest legislative intent, and it is objectors who do not "like" the result. This cannot be helped. Whether the Electoral Board "liked" the result, it properly interpreted the statutes (to which interpretation we do not defer) and the evidence (the factual findings of which were not against the manifest weight of the evidence), and its application of the law to the established facts not clearly erroneous. We therefore reject objectors' contention that the statute is "free from ambiguity and doubt" resulting in the qualification of only full-time officers for the office of sheriff.

¶ 65    The remainder of objectors' argument on this point steps through the principles of statutory construction from a flawed starting point. While the objectors recite the correct principles, they transmute the actual words employed in the Police Training Act into the Basic Training Course specified in section 3-6001.5(4) and proceed without accounting for the differences in the words actually used in the various provisions. As noted, this is the wrong starting point, so objectors'

analysis is flawed and improperly skewed as a result. Therefore, having already discussed it above, we need not further belabor the point, and we reject the entirety of objectors' analysis on this point.

¶ 66    Next, objectors argue that the Electoral Board improperly weighed Keigher's testimony and countenanced his opinion about a legal conclusion, leading to the wrong result. Whether this is true is immaterial, because we have accepted only Keigher's testimony that the basic training for full- and part-time trainees is substantively identical (a factual opinion the acceptance of which was not against the manifest weight of the evidence), not his testimony that the Training Board's certificates for both full- and part-time trainees satisfies the requirement in section 3-6001.5(4) of the Counties Code (a legal conclusion to which we do not defer even if the Board accepted it). Instead, our analysis focused on whether the Police Training Act supported the conclusion that both full- and part-time training certificates could satisfy the requirement of section 3-6001.5(4) of the Counties Code. In other words, we approached the issue from a legal-analysis perspective before looking to the evidence and whether the evidence jibed with our analysis. Thus, whether the Electoral Board improperly accepted testimony of a legal conclusion is beside the point because our review is concerned with the judgment not the Electoral Board's rationale. See *City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92 (2003) (the court determines whether the correct result was reached, not the reasoning). Effectively, even if the Electoral Board improperly accepted Keigher's testimony about a legal conclusion, any error is harmless, because it reached the correct decision (both as a matter of law interpreting the statutory provisions, and as a matter of applying the law to the established facts), and that decision was not clearly erroneous.[4]

_____

[4]We note that the candidate seems to conflate Keigher's opinion testimony with the official

¶ 67                                    C. Certified Inactive Status

¶ 68    In their remaining substantive argument on appeal, objectors contend that the candidate is not qualified for the office of sheriff due to his certified inactive status. This contention is forfeited.

¶ 69    The objectors did not premise their objection to the candidate's candidacy on his certified inactive status. It is well settled that an electoral board may only consider the objection before it and may not decide the matter on a ground never raised in the objection. *Delay v. Board of Election Commissioners of the City of Chicago*, 312 Ill. App. 3d 206, 210 (2000). Here, the issue of certified inactive status was never properly placed in issue, and objectors have forfeited its consideration. *Id.*; and see *Quinn v. Board of Commissioners for the City of Chicago Electoral Board*, 2019 IL App (1st) 190189, ¶ 29 (objection may not be raised for the first time on appeal).

¶ 70    The objectors argue that "it was the <u>Candidate</u> himself who introduced the evidence that his certificate was on inactive status with the [Training Board], so there is no prejudice to the Candidate due to surprise." Aside from failing to support this contention with a citation to the

---

positions and pronouncements of the Training Board throughout his response brief. The Training Board has promulgated administrative rules that represent its official positions and pronouncements. Keigher did not testify as the Training Board, only as an employee of the Training Board with expertise in police training. The candidate's conflation of Keigher with the Training Board is in error, but we have not accepted or relied on the candidate's contention that the Training Board had determined the issue of training (Keigher's opinion that the candidate's training certificate satisfies the requirement of a Basic Training Course in section 3-6001.5(4) of the Counties Code) in favor of the candidate, and we need provide no further discussion.

record (Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (failure to cite to the pages of the record relied on for an argument results in forfeiture of the argument)), it is a stretch to claim the argument was raised in the candidate's employment records when the fact that the candidate was currently separated from his employment was easily ascertainable and could have been made in the original objection. Instead, objectors decided to rely on the argument about a proper certificate of training and did not raise inactive status before the Electoral Board.

¶ 71    Forfeiture notwithstanding, in any event, the statute itself rebuts the substance of objectors' contention. Section 8.2 of the Police Training Act provides, relevantly:

> ¶ 72    "An individual who is not certified by the Board or whose certified status is inactive shall not function as a law enforcement officer, be assigned the duties of a law enforcement officer by an agency, or be authorized to carry firearms under the authority of the employer, except that sheriffs who are elected are exempt from the requirement of certified status. Failure to be in accordance with this Act shall cause the officer to forfeit the officer's position." 50 ILCS 705/8.2(a) (West 2020) (eff. Jan. 7, 2022).

¶ 73    The candidate holds a certificate attesting to his successful completion of the part-time law enforcement basic training course. Section 8.2(a) of the police Training Act expressly exempts sheriffs who are elected "from the requirement of certified status." There can be no argument that section 8.2 would exempt the candidate from the requirement that he must have certified active status should he be elected to the office of sheriff.

¶ 74    The objectors argue that section 8.1(a) of the Police Training Act (50 ILCS 705/8.1(a) (West 2020) (eff. Jan. 7, 2022)) precludes a law enforcement officer whose certified status is inactive from performing any of the duties of a law enforcement officer. This argument is wholly

disingenuous. As noted, the candidate holds a part-time certificate and section 8.1, on its face, is inapplicable. Moreover, the objectors have argued that the candidate is subject only to the requirements of section 8.2 in all of their other arguments before us. Plainly, objectors do not intend this change in position to be a concession that the candidate is otherwise qualified for the office of sheriff under section 8.2. Accordingly, procedurally and on the merits, we reject objectors' contention.

¶ 75                      D. False Statement of Qualifications in Nomination Papers

¶ 76    Last, objectors close their analytical loop, arguing that the candidate falsely stated in his nomination papers that he was qualified for the office of sheriff. Objectors claim that the candidate's basic training certificate and his inactive status render him unqualified for the office he seeks. We have determined that the candidate has satisfied the law enforcement training requirement of section 3-6001.5(4) of the Counties Code. We have also determined that objectors' contention regarding the candidate's inactive status certification is incorrect as a matter of law and otherwise is not properly before us. Accordingly, the representation in his nomination papers that he is qualified to assume the office he seeks is not a false statement. We therefore reject objectors' contention on this point.

¶ 77                                  III. CONCLUSION

¶ 78    For the foregoing reasons, the judgment of the circuit court and the decision of the McHenry County Officers Electoral Board are affirmed.

¶ 79    Circuit court judgment affirmed.

¶ 80    Electoral Board decision affirmed.